1    **WO**

2

3

4

5              **IN THE UNITED STATES DISTRICT COURT**

6                  **FOR THE DISTRICT OF ARIZONA**

7

8    Communications Workers of America      )    No. CV06-1503-PHX-DGC (Lead)
     Plan for Employees' Pensions and Death )    No. CV06-1580-PHX-JWS
9    Benefits,                              )
                                            )              (Consolidated)
10            Plaintiff,                     )
                                            )
11   vs.                                    )    **ORDER**
                                            )
12   CSK Auto Corporation, et al.,          )
                                            )
13            Defendants.                    )
     _____    )

14

15          Defendants CSK Auto Corporation ("CSK") and Maynard L. Jenkins have filed a

16   motion to dismiss the consolidated class action complaint. Dkt. #34. Defendants Martin G.

17   Fraser and James B. Riley have each filed a separate motion to dismiss. Dkt. ##39, 59.

18   Fraser, Riley, and Individual Defendant Don Watson have also joined in CSK's motion to

19   dismiss and reply memoranda. Dkt. ##39, 36, 52, 54, 59. The Court has reviewed the

20   memoranda filed by the parties. Dkt. ##34, 39, 46, 51, 54, 59, 65. For the reasons stated

21   below, the Court will grant Defendants' motions to dismiss.[1]

22   **I.    Background.**

23          CSK is a retailer of automotive parts and accessories under the names Checker Auto

24   Parts, Schuck's Auto Supply, and Kragen Auto Parts. Dkt. #32 ¶¶ 2, 21. Beginning on

25   March 27, 2006, CSK made a series of public announcements that it would restate prior

26

27   [1]Defendants' request for oral argument is denied because the parties have thoroughly
     discussed the law and evidence and oral argument will not aid the Court's decisional process.
28   *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

years' financial statements due to accounting errors uncovered by its Audit Committee. *Id*. ¶ 70. After the announcement, CSK stock fell $1.26 to $14.64 per share. The share price fell further to $13.06 after an announcement on April 14, 2006, and over the next several days dropped to $12.90 per share. *Id*. ¶¶ 10, 12. On September 28, 2006, CSK confirmed that accounting errors and irregularities had impacted its financial statements during fiscal years 2001 to 2003, each quarter in 2004, and the first three quarters of 2005. *Id*. ¶ 75. The overstatements included $70 million in inventory, $12 million in vendor allowances, and $3-$7 million in store surplus fixtures and supplies. *Id*. The company also announced that President/Chief Operating Officer ("COO") Martin Fraser and Chief Administrative Officer/Chief Financial Officer ("CFO") Don Watson would no longer be employed by the company. *Id*. Chairman and Chief Executive Officer ("CEO") Maynard Jenkins also announced his retirement. *Id*.

Plaintiff Communications Workers of America Plan for Employees' Pensions and Death Benefits seeks to represent a class of individuals who acquired CSK securities during a Class Period from March 20, 2003 to April 13, 2006. *Id*. ¶ 1. Plaintiff alleges that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, and that the Individual Defendants violated Section 20(a) of the Exchange Act. *Id*. ¶¶ 124-39.[2]

The Complaint alleges that CSK overstated its financial performance in violation of Generally Accepted Accounting Principles ("GAAP") in a number of ways. At the end of each quarter, for example, CSK purposely delayed the unloading of trucks full of inventory to avoid listing the inventory on its quarterly reports. *Id*. ¶ 93. When CSK purchased Big Wheels/Rossi in June 1999, the company disposed of much of the inventory it purchased and wrote it off as missing or stolen. *Id*. ¶ 94. CSK also allegedly made up for inventory shortages at its stores by adding in-transit inventory to in-store inventory accounts. *Id*. ¶ 95.

---

[2]The Individual Defendants are Fraser, Watson, Jenkins, and James Riley, CSK's current Senior Vice President and CFO. Dkt. #32 ¶ 2.

1   When vendors erroneously shipped excess inventory, CSK allegedly did not notify them of

2   credits to their accounts and thus overstated inventory by up to $12,000 each week. *Id.* ¶ 97.

3   The Complaint further alleges that CSK improperly recorded vendor allowances. *Id.* ¶ 90.

4   Vendors would reward CSK through payments based on such factors as product placement,

5   advertising, or levels of inventory purchases. *Id.* When CSK did not receive sufficient

6   vendor allowances, it would characterize the shortage in vendor allowances as shrinkage or

7   store theft. *Id.* ¶ 91.

8   **II.   Pleading Requirements in Securities Fraud Actions.**

9        Defendants bring their motion under Federal Rules of Civil Procedure 9(b) and

10  12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").  In ruling on

11  a motion to dismiss, the Court generally must accept the plaintiff's allegations as true and

12  construe them in the light most favorable to plaintiff. *Gompper v. VISX, Inc.*, 298 F.3d 893,

13  896 (9th Cir. 2002).  When determining whether Plaintiff has satisfied the heightened

14  pleading requirements of the PSLRA, however, the Court must also consider reasonable

15  inferences that disfavor the Plaintiff's position. *Id.* at 897.

16       To establish a claim under Section 10(b) and Rule 10b-5, a plaintiff must plead and

17  prove (1) a material misrepresentation or omission, (2) scienter, (3) a connection with the

18  purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *See*

19  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  The pleading must also

20  conform to the "particularity" requirements of Rule 9(b). *See Gompper*, 298 F.3d at 895;

21  *Semegen v. Weidner*, 780 F.2d 727, 734-35 (9th Cir. 1985).

22       Under the PSLRA, a complaint must now "specify each statement alleged to have

23  been misleading, the reason or reasons why the statement is misleading, and, if an allegation

24  regarding the statement or omission is made on information and belief, the complaint shall

25  state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

26  The complaint must also, "with respect to each act or omission[,] . . . state with particularity

27  facts giving rise to a *strong inference* that defendant acted with the required state of mind,"

28  or scienter. 15 U.S.C. § 78u-4(b)(2) (emphasis added).  To plead scienter properly, "[t]he

1   complaint must allege that the defendant made false or misleading statements either

2   intentionally or with deliberate recklessness or, if the challenged representation is a forward

3   looking statement, with actual knowledge that the statement was false or misleading." *In re*

4   *Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir. 2002) (quotations omitted).

5       A court must dismiss any complaint that does not satisfy these requirements.  15

6   U.S.C. § 78u-4(b)(3)(A).  Congress enacted the PSLRA to put an end to the practice of

7   pleading "fraud by hindsight." *See In re Daou Systems, Inc.*, 411 F.3d 1006, 1021 (9th Cir.

8   2005), *cert. denied*, 126 S.Ct. 1335 (2006).

9   **III.   Analysis.**

10      **A.      Misrepresentation by Defendant Fraser.**

11      Individual Defendant Martin Fraser moves to dismiss the Complaint on the ground

12  that he did not make a materially false or misleading statement during the Class Period.

13  Fraser was CSK's COO, and the Complaint does not allege that he had any responsibility for

14  or specialized knowledge of accounting.

15      Of the allegedly false and misleading financial statements, press releases, and

16  conference calls listed in the Complaint, Fraser is quoted only twice, for statements he made

17  during conference calls on June 4, 2004 and September 1, 2005.  Dkt. #32 ¶¶ 49, 65.  These

18  two statements, in their entirety, were as follows:

19          But our in-stock position is very good in our stores.  We have an excellent
            perpetual inventory system that does automatic replenishment at the stores and
20          warehouses and our in-stock position is extremely high.

21  *Id.* ¶ 49.

22          We continue to refine our core auto parts offering, improving our selection and
            inventory performance.  Our category management process has resulted in
23          improved planograms, higher related transaction sales and lower inventories.

24  *Id.* ¶ 65.

25      "The time, place and content of an alleged misrepresentation may identify the

26  statement or omission complained of, but these circumstances do not constitute fraud." *In*

27  *re GlenFed Sec. Litig.*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (*superseded on*

28  *other grounds* by the PSLRA) (internal quotations omitted).  A plaintiff "must set forth what

1    is false or misleading about a statement, and why it is false." *Id.*

2          Other than very generalized allegations that accounting and inventory practices within
3    CSK were flawed, Plaintiff never explains why these specific statements by Fraser were
4    false.  For example, Plaintiff never explains such details as why CSK's inventory system was
5    not "very good" or how CSK was failing to "refine . . . inventory performance."  Dkt. #32
6    ¶¶ 45, 69.  Such details are required under the PSLRA.  *See* 15 U.S.C. § 78u-4(b)(1); *In re*
7    *Vantive*, 283 F.3d at 1086-87.  Generalized allegations of securities fraud like those set forth
8    in the Complaint (Dkt. #32 ¶¶ 31-32, 36-37, 41, 45, 50, 53, 56, 58, 63, 66, 69, 79-83) fail to
9    satisfy the heightened pleading requirements of Rule 9(b) and the PSLRA.  *Id.*

10          Nor does Plaintiff explain how Fraser's two statements relate to the inventory
11   accounting mistakes over which it is suing.  Fraser's statements clearly refer to the process
12   for placing inventory on store shelves, a process logical for a COO to understand and discuss.
13   The statements do not relate to the process of inventory accounting that formed the basis of
14   CSK's public statements, and the Complaint fails to state that Fraser had any knowledge or
15   responsibility regarding inventory accounting.  Although Plaintiff does allege that inventory
16   shortages caused CSK to classify in-transit inventory as in-store inventory, Plaintiff fails to
17   connect this alleged misrepresentation to Fraser.  Nor does Plaintiff state with particularity
18   the facts on which this allegation is based or identify its source, as required by the PSLRA.
19   *See* 15 U.S.C. § 78u-4(b)(1); *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 985 (9th Cir.
20   1999).

21          Plaintiff argues that even if Fraser did not make a false or misleading statement, he
22   may still be held liable.  The Supreme Court has limited liability for Section 10(b) and Rule
23   10b-5 actions to "primary violators" of the securities laws.  *Central Bank of Denver, N.A. v.*
24   *First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177-78, 191 (1994).  The Ninth Circuit
25   has interpreted this limitation to mean that an individual may become a primary violator
26   through "substantial participation or intricate involvement in the preparation of fraudulent
27   statements" even if he did not actually make the statements.  *Howard v. Everex Sys. Inc.*, 228
28   F.3d 1057, 1061 n.5 (9th Cir. 2000).  Plaintiff contends that Fraser may be held liable

because he "substantially participated, as President and Chief Operating Officer, on 12 conference calls during the Class Period where he publicly misrepresented the Company's reported financials."   Dkt. #46 at 9.   But the Complaint does not explain Fraser's involvement or participation in any of the phone calls, other than claiming he was present. Plaintiff has not cited, and the Court cannot find, any binding authority for the position that mere presence equates with substantial participation.   Vague and repetitive allegations that "defendants . . . reiterated the financial results" (Dkt. #32 ¶¶ 30, 34, 40, 44, 47, 49, 52, 55, 60, 62, 65, 68) are not sufficient to show that Fraser substantially participated or was intricately involved in any of the other Defendants' purported misrepresentations. The Court will therefore grant Fraser's motion to dismiss.[3]

### B.    Scienter – CSK and the Individual Defendants.

CSK's motion to dismiss is focused entirely on the scienter element of Plaintiff's claim.  The Court must determine "whether the total of plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness."  *In re Daou*, 411 F.3d at 1022 (quotations omitted). As noted above, the Court "must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs."  *Gompper*, 298 F.3d at 897. For the reasons discussed below, the Court finds that Plaintiff has not pleaded facts giving rise to a strong inference of scienter against CSK or the Individual Defendants.  The Court will analyze each category of scienter allegations in turn.

### 1.    CSK's Accounting Irregularities.

"[T]he mere publication of inaccurate accounting figures, or a failure to follow

---

[3]Individual Defendant Riley, who replaced Watson as CFO in October of 2005, has also moved to dismiss on the grounds that he did not make a false or misleading statement during the Class Period. The Court agrees with Riley that Plaintiff does not sufficiently explain why the one comment attributed to him in the Complaint (Dkt. #32 ¶ 68) is false.  Nevertheless, Riley's Sarbanes-Oxley certification of CSK's 3Q05 SEC filing is a material misrepresentation that precludes Riley's dismissal on the basis of the misrepresentation element of a Rule 10b-5 claim.  *See Howard*, 228 F.3d at 1061.

GAAP, without more, does not establish scienter." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994). The subsequent acknowledgment of GAAP violations and the restatement of financial results may show negligence, but they "do[] not rise to the level of the nefarious mental state necessary to constitute securities fraud[.]" *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002). Were it otherwise, companies might have a greater incentive to conceal accounting errors or avoid internal audits than to investigate and announce accounting irregularities.

Plaintiff admits that CSK's accounting irregularities and restatements cannot alone support a strong inference of scienter. Dkt. #46 at 11-13. Plaintiff must therefore provide "additional, specific allegations that the defendants had actual knowledge of relevant facts from which scienter could be inferred." *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F.Supp.2d 1063, 1073 (N.D. Cal. 2002).

### 2. Defendants' Access and Positions.

Plaintiff contends that the Individual Defendants possessed scienter because of their "position and access to material non-public information." Dkt. #32, ¶ 85. Plaintiff further alleges that Defendants Watson and Riley possessed scienter because the errant financial statements "were prepared by the finance department under Watson's and Riley's oversight and direction." *Id.* ¶ 86. Plaintiff alleges scienter by CEO Defendant Jenkins because he "was responsible for the financial results and press releases issued by the Company." *Id.* ¶ 87. Plaintiff alleges that because CSK's vendor allowance program was important to the company, the Defendants "would undoubtedly have focused on this aspect of the Company's operations." *Id.* ¶ 89.

These general allegations concerning the Defendants' positions and access to information do not establish a strong inference that they acted with scienter. More detail is required for a strong inference, and Plaintiff has not provided it. *See In re Vantive*, 283 F.3d at 1087 (rejecting plaintiff's attempt to establish knowledge by referring to defendants' "'hands on' management style, their 'interaction with other corporate officers and employees, their attendance at management and board meetings, and reports generated on a weekly and

1  monthly basis in the Finance Department'"); *In re Action Performance Inc. Sec. Litig.*, No.

2  05-2512-PHX-DGC, 2007 WL 496770, at *4 (D. Ariz. Feb. 13, 2007) (rejecting general

3  allegations that company president was a "hands on" manager familiar with "everything").

4  Such conclusory allegations fail to establish scienter even when they involve a company's

5  core operations.  *See In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th Cir. 2003).

6  ### 3.  Officers' Involvement in Accounting Irregularities.

7  Plaintiff alleges some specific conduct by Defendants.  Plaintiff alleges, for example,

8  that Fraser "instructed subordinates to book revenue from sales of already depreciated CSK

9  trucks[.]" Dkt. #32 ¶ 88.  Plaintiff further alleges that the Individual Defendants "had

10  firsthand knowledge of the errors and irregularities in in-transit inventory and other inventory

11  accounts" due to such practices as "clearing" the receiving dock to "keep incoming inventory

12  off the books," writing off as "missing" inventory acquired in a June 1999 corporate

13  acquisition, making "necessary adjustments" to balance sheets, and failing to notify vendors

14  of shipments in excess of invoice.  *Id.* ¶¶ 93-98.

15  The PSLRA requires, however, that a plaintiff "provide a list of all relevant

16  circumstances in great detail."  *Silicon Graphics*, 183 F.3d at 984.  The complaint must

17  include "adequate corroborating details" to allow the court to determine "whether there is any

18  basis for alleging that the officers knew that their statements were false at the time they were

19  made – a required element in pleading fraud."  *Id.* at 985.  Sources on which a plaintiff relies

20  should be identified in some specificity, and the plaintiff should include facts that show the

21  reliability of the sources.  *Id.*

22  Plaintiff, by contrast, merely alleges that Defendants knew of the alleged fraud.

23  Plaintiff has not provided the relevant circumstances of that knowledge "in great detail."  *Id.*

24  at 984.  Nor has Plaintiff identified a single report, memorandum, witness, or other source

25  for its allegation of Defendants' knowledge, much less adequate corroborating details

26  showing that its sources are reliable.  There are no allegations of any specific instances where

27  Defendants engaged in fraudulent behavior, except for the allegation that Fraser instructed

28  subordinates to book revenue from the sales of already depreciated CSK trucks.  But even

this allegation of wrongdoing lacks any description of time, place, the source of the allegation, or the source's reliability.

Citing *In re Daou*, 411 F.3d at 1015, Plaintiff argues that it is "unnecessary to name the sources of plaintiff's information as long as the Complaint contains 'adequate corroborating details.'" Dkt. #46 at 23 fn. 14. This statement is incorrect. *In re Daou* stated, with regard to confidential witnesses only, that a Plaintiff need not name its sources so long as it describes the witnesses "with sufficient particularity to support the probability that a person in the position occupied by the source[s] would possess the information alleged and the complaint contains adequate corroborating details." 411 F.3d at 1015 (quotations omitted). Plaintiff has not identified facts from any confidential witness, much less one in a position to possess the information alleged.

Plaintiff also argues that "it is unnecessary for plaintiff to provide details of its investigative sources when the allegations merely provide corroborating details of misconduct to which defendants' [sic] have already admitted." Dkt. #46 at 24. But a corroborating detail can hardly be adequate without some information regarding its source. Otherwise, a plaintiff could survive a motion to dismiss whenever a defendant has publicly admitted accounting errors simply by drafting a complaint based on completely unfounded details that purport to corroborate the public statements. If scienter is to be strongly inferred as the law requires, plaintiffs must identify the sources of their corroborating information and provide some basis for concluding that they are reliable. Here, Plaintiff has provided no information regarding how it learned the few corroborating facts alleged in the Complaint.

### 4.    Departures of Individual Defendants from CSK.

Plaintiff claims that the departure of three Individual Defendants from CSK after the announcement of the accounting errors serves as additional evidence of scienter. Dkt. #32 ¶¶ 4, 75, 88. But officers and employees can be terminated for negligence or incompetence as well as fraud. Neither a resignation nor a termination by itself gives rise to a strong inference of scienter. *See, e.g.*, *In re Hypercom Corp. Sec. Litig.*, CV-05-0455-PHX-NVW, 2006 WL 1836181, at *8 (D. Ariz. July 5, 2006) (resignation); *In re U.S. Aggregates,* 235

F.Supp.2d at 1073 (termination).  CSK did not offer, and Plaintiff has not alleged, any details that indicate the Individual Defendants resigned or were terminated for their active participation in fraudulent conduct.  Without such details, there is no reason to believe that the three Individual Defendants did not leave "simply because the errors that led to the restatement occurred on [their] watch or because [they] failed adequately to supervise [their] department[s]." *In re U.S. Aggregates*, 235 F.Supp.2d at 1074.[4]

## 5.    Insider Stock Sales.

Plaintiff would have the Court infer scienter from stock sales that Defendants Jenkins, Fraser, and Watson made during the Class Period.  Plaintiff contends that "Defendants were further motivated to engage in [securities fraud] in order to sell 560,794 shares of their personally held CSK Auto stock and thereby reap over $9.1 million in insider trading profits."  Dkt. #32 ¶ 107.

Stock sales by company officers are "not inherently suspicious." *In re Vantive*, 283 F.3d at 1092.  "[I]nsider trading is suspicious only when it is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Silicon Graphics*, 183 F.3d at 986 (quotations omitted).  "Among the relevant factors to consider are: (1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *Id.*  The Court will begin with the third factor because it is dispositive given the current Complaint.

The Complaint does not provide any trading history of the Individual Defendants before the Class Period.  "In determining whether scienter has been sufficiently alleged, the

---

[4]The facts of this case are notably different from the facts of cases cited by Plaintiff. *See* Dkt. #46 at 22 (*citing In re Adaptive Broadband Sec. Litig.*, No. C 01-1092 SC, 2002 WL 989478, at *14 (N.D. Cal. Apr. 2, 2002); *In re McKesson HBOC Sec. Litig.*, 126 F.Supp.2d 1248, 1276 (N.D. Cal. 2000)).  In *McKesson*, upon which *Adaptive Broadband* relied, the company's statements explicitly implicated the terminated employees as active participants in fraud.  Here, CSK simply stated that Jenkins was retiring and that Fraser and Watson "as well as several other individuals in the Company's finance organization are no longer employed by the Company."  Dkt. #32 ¶ 75.

1   Ninth Circuit has refused to attribute any significance to a defendant's stock sales if no prior

2   trading history is alleged." *Wojtunik v. Kealy*, 394 F.Supp.2d 1149, 1166-67 (D. Ariz. 2005)

3   (citing *In re Vantive*, 283 F.3d at 1095 and *Ronconi v. Larkin*, 253 F.3d 423, 436 (9th Cir.

4   2001)).  Prior history is required if the plaintiff expects trading activity within a Class Period

5   to be viewed as suspicious.  Because the Complaint contains no such history, it fails the third

6   factor of the *Silicon Graphics* test and Plaintiff cannot rely on Defendants' stock sales to

7   strongly imply scienter.

8        Apparently recognizing this deficiency, Plaintiff's response to the motions to dismiss

9   sets forth trading history information that is not included in the Complaint.  Because such

10  information could readily be added to an amended complaint, the Court will address all three

11  factors identified in *Silicon Graphics*.

12       Defendants argue that Plaintiff overstated the percentage of stock sold by the

13  Individual Defendants by not taking into account vested stock options. Dkt. #51 at 7.  There

14  is "no reason to distinguish vested stock options from shares because vested stock options

15  can be converted easily to shares and sold immediately.  Actual stock shares plus exercisable

16  stock options represent the owner's trading potential more accurately than the stock shares

17  alone."  *Silicon Graphics*, 183 F.3d at 986-87.  Taking such options into account, the

18  Individual Defendants sold 45% of their holdings during the Class Period, not 91% as

19  Plaintiff claims. This amount may be sufficient to support a reasonable inference of scienter,

20  but courts have found that sales of similar or greater percentages or amounts do not give rise

21  to the required strong inference of scienter.  *See In re Vantive*, 283 F.3d at 1092-93 (sales of

22  38% of defendant's holdings totaling $36 million not suspicious); *Ronconi*, 253 F.3d at 435-

23  36 (seven defendants' stock sales of between 69% and 98% of their holdings did not give rise

24  to an inference of scienter); *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir.

25  1989) ($84 million of stock sales in 10 months did not preclude summary judgment).  The

26  first *Silicon Graphics* factor, therefore, weighs against a strong inference of scienter.

27       Defendants additionally argue that the timing of each individual stock sale negates an

28  inference of scienter. Dkt. ##34 at 12; 51 at 8.  They note that all of the sales occurred before

1    February 2005, more than one year before CSK's public disclosures at the end of the Class

2    Period.  Courts have found such timing to be inconsistent with a strong inference of scienter.

3    *See In re Bisys Sec. Litig.*, 397 F.Supp.2d 430, 444-45 (S.D.N.Y. 2005) (insider sales not

4    unusual when stock sales were not clustered at the end of Class Period, "when insiders

5    theoretically would have rushed to cash out before the fraud was revealed and stock prices

6    plummeted"); *In re FVC.COM Sec. Litig.*, 136 F.Supp.2d 1031, 1040 (N.D. Cal. 2000).

7           Defendants also note that all but 2% of the stock sold by the Individual Defendants

8    during the Class Period involved options set to expire in a matter of months.  *See* Dkt. #51

9    at 8.  Such sales are logical, not inherently suspicious.  Without further fact-based allegations

10   in the Complaint, it is more likely that the Individual Defendants were trying to capitalize on

11   the benefits of their stock options than defraud investors when they made their Class Period

12   sales.  The second *Silicon Graphics* factor thus weighs against a strong inference of scienter.

13          Finally, the Individual Defendants' prior trading history does not support a strong

14   inference of scienter.  Plaintiff's response provides evidence that the Individual Defendants

15   sold only 3,200 shares of CSK stock in the three years preceding the Class Period.  Dkt. #46,

16   Ex. A.  While 3,200 shares are far fewer than the 560,794 shares sold during the Class

17   Period, the difference is explained by the fact that almost all the sales were based on options

18   about to expire.  Defendants note that no options were set to expire from 2000-2003 and that,

19   for 77% of the time between 2000-2003, CSK's stock price was below the strike price of the

20   Individual Defendants' options.  The third *Silicon Graphics* factor weighs against scienter.

21                        **6.    CSK's Financing Activities.**

22          The Complaint also alleges scienter by claiming that "[b]efore disclosing CSK Auto's

23   massive accounting errors and irregularities, defendants moved quickly to raise hundreds of

24   millions of dollars in debt and equity offerings . . . [which were] critical to CSK Auto's cash

25   flow needs."  Dkt. #32, ¶¶ 109-110.  While the Complaint describes CSK as acquiring $460

26   million of new debt and equity in 2005, it contains no information regarding how this activity

27   differed from CSK's past debt and equity acquisitions.  Nor does it provide any factual

28   support for its claim that this financing happened "quickly" when compared to CSK's normal

1   operations.  Corporate financing is an ordinary and appropriate corporate objective that does

2   not give rise to an inference of scienter absent other detailed information.  *Lipton v.*

3   *Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) (stating that a company's interest

4   in obtaining favorable financing is an "ordinary and appropriate corporate objective"); *see*

5   *also Zack v. Allied Waste Indus., Inc.*, No. CIV04-1640-PHX-MHM,  2005 WL 3501414,

6   at *14 (D. Ariz. Dec. 15, 2005) (finding allegations that defendants engaged in fraud to

7   secure favorable financing "insufficient to give a strong inference of scienter").

### 7.        Lack of Internal Controls.

9       Plaintiff argues that "defendants allowed and were responsible for initiating a gross

10  lack of internal controls" that led to the accounting irregularities.  Dkt. #32 ¶ 105.  But

11  Plaintiff alleges no supporting facts with particularity.  Without such facts, a lack of internal

12  controls generally does not suffice to show scienter.  *See In re Hypercom*, 2006 WL

13  1836181, at *8 ("Presumably every company that issues a financial restatement because of

14  GAAP errors will cite as the reason a lack of effective internal controls."); *see also In re*

15  *Watchguard Sec. Litig.*, No. C05-678LR, 2006 WL 2927663, at *10 (W.D. Wash. Oct. 12,

16  2006) ("That the controls were inadequate is perhaps an indication of incompetence, but

17  incompetence, even gross incompetence, is no basis for a securities fraud claim.).

18      In its response, Plaintiff recedes from its position that CSK's lack of internal controls

19  gives rise to a strong inference of scienter, but claims that the Sarbanes-Oxley certifications

20  signed by Jenkins, Watson and Riley that "attest[] to the effectiveness of CSK Auto's internal

21  accounting controls support a strong inference of scienter."  Dkt. #46 at 15.   Courts

22  considering cases where there is no evidence that defendants knew of or recklessly

23  disregarded inadequate internal controls have held, however, that Sarbanes-Oxley

24  certifications, by themselves, do not support a strong inference of scienter.  *See In re*

25  *Hypercom*, 2006 WL 1836181, at *11; *In re Watchguard*, 2006 WL 2927663, at *10.[5]

26  _____

27  [5]Plaintiff cites *In re Lattice Semiconductor Corp. Sec. Litig.*, No. CV04-1255-AA, 2006 WL
    538756 at *18 (D. Or. Jan. 3, 2006), as authority for its position that Sarbanes-Oxley
28  certifications give rise to an inference of scienter.  In that case, however, the company

An inference can be drawn that Defendants Jenkins and Watson recklessly disregarded CSK's accounting irregularities when they signed CSK's Sarbanes-Oxley certifications.  Any inference involving Riley is weaker because he signed only one Sarbanes-Oxley certification and did so soon after he was hired and near the end of the Class Period.  Plaintiff fails, however, to plead particularized facts that allow a strong inference of deliberate recklessness.  *See* 15 U.S.C. § 78u-4(b)(2).

### 8.   Overall Inference of Scienter.

Considering the Complaint as a whole, CSK's admission of accounting errors and the Individual Defendants' Sarbanes-Oxley certifications and high-level positions at CSK raise some inference of scienter.  The Court concludes, however, that Plaintiff has failed to provide the detailed recitation of reliable facts necessary to create a strong inference of scienter as required by the PSLRA.  Without such detail, the Complaint amounts to little more than a pleading of "fraud by hindsight."  *In re Daou*, 411 F.3d at 1021.

### C.   Section 20(a) Claims Against the Individual Defendants.

To prevail on a Section 20(a) claim, "plaintiffs must first allege a violation of § 10(b) or Rule 10b-5."  *Lipton*, 284 F.3d at 1035.  Because Plaintiffs have failed properly to allege their securities fraud claims, the Individual Defendants cannot be liable for Section 20(a) violations.  The Court must therefore dismiss this claim as well.

### D.   Leave to Amend.

Because the Court cannot conclude that Plaintiff is unable to plead a claim, Plaintiff will be granted leave to amend its Complaint in accordance with the schedule set forth below.

**IT IS ORDERED:**

1.   Defendants' Motions to Dismiss (Dkt. ##34, 39, 59) are **granted**.

2.   Plaintiff's Amended Complaint (Dkt. #32) is dismissed with leave to file an

admitted that one of the individual defendants had made false accounting entries.  The plaintiff also provided information from confidential witnesses that the individual defendant would not have done so without the approval of the company's officers.  *Id.* at *18.  Such supporting allegations are absent from Plaintiff's Complaint.

- 14 -

1    amended complaint by **April 26, 2007**, submitting both clean and red-lined

2    versions in compliance with Local Rule LRCiv 15.1.

3    3.    Any motion by Defendants to dismiss the amended complaint must be filed

4    within **28 days** of service of the amended complaint, any response within **14**

5    **days** of service of the motion, and any reply within **7 days** of service of the

6    response.

7    4.    In light of this ruling, the Rule 16 scheduling conference set for May 2, 2007

8    (Dkt. #64) is **vacated** and will be rescheduled after any additional motions to

9    dismiss have been resolved.

10   DATED this 28th day of March, 2007.

11

12

13   _____

14   David G. Campbell
     United States District Judge