1  BONNETT, FAIRBOURN, FRIEDMAN
      & BALINT, P.C.
2  ANDREW S. FRIEDMAN (AZ005425)
   FRANCIS J. BALINT, JR. (AZ007669)
3  2901 N. Central Avenue, Suite 1000
   Phoenix, AZ 85012
4  Telephone: 602/274-1100
   602/274-1199 (fax)
5  afriedman@bffb.com
   fbalint@bffb.com
6
   Liaison Counsel
7
   COUGHLIN STOIA GELLER
8     RUDMAN & ROBBINS LLP
   DARREN J. ROBBINS
9  JEFFREY D. LIGHT
   SUSAN G. TAYLOR
10 TRIG R. SMITH
   ERIC I. NIEHAUS
11 655 West Broadway, Suite 1900
   San Diego, CA 92101-3301
12 Telephone: 619/231-1058
   619/231-7423 (fax)
13
   Lead Counsel for Plaintiffs
14
                    UNITED STATES DISTRICT COURT
15
                         DISTRICT OF ARIZONA
16

| | |
|---|---|
| COMMUNICATIONS WORKERS OF AMERICA PLAN FOR EMPLOYEES' PENSIONS AND DEATH BENEFITS, <br><br>                Plaintiff, <br><br>     vs. <br><br> CSK AUTO CORPORATION, et al., <br><br>                Defendants. | No. CIV-06-1503-PHX-DGC (Lead) **(Consolidated)** <br><br> <u>CLASS ACTION</u> <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEY FEES AND EXPENSES <br><br> DATE:    July 1, 2008 <br> TIME:    2:00 p.m. <br> COURTROOM: The Honorable <br>                     David G. Campbell |

[Caption continued on following page.]

| | | |
|---|---|---|
| WILFRID FORTIER, | ) | No. CIV-06-1580-PHX-JWS |
| Plaintiff, | ) | CLASS ACTION |
| vs. | ) | |
| CSK AUTO CORPORATION, et al., | ) | |
| Defendants. | ) | |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................. 1

II. AWARD OF ATTORNEY FEES ........................................................................ 4

    A. The Legal Standards Governing the Award of Attorney Fees in Common Fund Cases Supports the Requested Award ................................ 4

        1. A Reasonable Percentage of the Fund Recovered Is the Appropriate Approach to Awarding Attorney Fees in Common Fund Cases ............................................................. 4

        2. A Percentage Fee of 24.5% of the Fund Created Is Reasonable in This Case ..................................................... 6

    B. Other Relevant Factors Justify an Award of a 24.5% Fee in This Case ............................................................................................ 7

        1. The Result Achieved .......................................................... 7

        2. The Risks of the Litigation and the Novelty and Difficulty of the Questions Presented ...................................................... 8

        3. The Skill Required and the Quality and Efficiency of the Work ................................................................................. 11

        4. The Contingent Fee Nature of the Case and the Financial Burden Carried by Lead Counsel ...................................... 12

        5. A 24.5% Fee Award Is Consistent With or Lower than the Market Rate in Similar Complex, Contingent Litigation ................ 14

        6. The Requested Fee Is Reasonable When Cross-Checked Against Counsel's Lodestar ............................................. 16

III. COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ....... 17

IV. CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abrams v. Lightolier Inc.*,
  50 F.3d 1204 (3d Cir. 1995) .................................................................. 17

*Arenson v. Bd. of Trade*,
  372 F. Supp. 1349 (N.D. Ill. 1974) ....................................................... 12

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988),
   *aff'd*, 899 F.2d 21 (11th Cir. 1990) ................................................. 7, 13

*Blum v. Stenson*,
  465 U.S. 886 (1984) .................................................................. 4, 5, 15

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
  8 F.3d 722 (10th Cir. 1993) ................................................................... 17

*Bryant v. Avado Brands, Inc.*,
  100 F. Supp. 2d 1368 (M.D. Ga. 2000),
   *rev'd on other grounds and remanded sub nom.*
   *Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001) ................................ 9

*Camden I Condo. Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ................................................................ 5

*Cent. R.R. & Banking Co. v. Pettus*,
  113 U.S. 116 (1885) ................................................................................ 4

*Churchill Vill., L.L.C. v. GE*,
  361 F.3d 566 (9th Cir. 2004) ................................................................. 9

*Clark v. Lomas & Nettleton Fin. Corp.*,
  79 F.R.D. 641 (N.D. Tex. 1978), *vacated on other grounds*,
  625 F.2d 49 (5th Cir. 1980) .................................................................... 9

*Daubert v. Merrell Dow Pharms.*,
  509 U.S. 579 (1993) .............................................................................. 11

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) .............................................................................. 11

*Florin v. Nationsbank, N.A.*,
  34 F.3d 560 (7th Cir. 1994) .................................................................... 5

**Page**

*Goldstein v. MCI WorldCom,*
    340 F.3d 238 (5th Cir. 2003) ............................................................................ 10

*Gottlieb v. Barry,*
    43 F.3d 474 (10th Cir. 1994) ............................................................................ 5

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) .............................................................................. 17

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ........................................................................................ 7

*In re Activision Sec. Litig.,*
    723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................... 6

*In re AMERCO Sec. Litig.,*
    No. CIV-04-2182-PHX-RJB, slip op. (D. Ariz. Nov. 2, 2006) ........................ 14

*In re Broadcom Corp. Sec. Litig.,*
    No. SA CV 01-275-GLT, 2005 U.S. Dist. LEXIS 12118
    (C.D. Cal. June 3, 2005) ................................................................................. 11

*In re Cont'l Ill. Sec. Litig.,*
    962 F.2d 566 (7th Cir. 1992) ........................................................................... 5

*In re Equity Funding Corp. Sec. Litig.,*
    438 F. Supp. 1303 (C.D. Cal. 1977) ............................................................... 12

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) .............................................................................. 5

*In re Harrah's Entm't,*
    No. 95-3925, 1998 U.S. Dist. LEXIS 18774
    (E.D. La. Nov. 25, 1998) ................................................................................. 16

*In re Heritage Bond Litig.,*
    No. 02-ML-1475-DT(RCx), 2005 WL 1594389
    (C.D. Cal. June 10, 2005) ............................................................................... 11

*In re Ikon Office Solutions, Inc.,*
    194 F.R.D. 166 (E.D. Pa. 2000) ................................................................... 9, 15

*In re King Res. Co. Sec. Litig.,*
    420 F. Supp. 610 (D. Colo. 1976) ............................................................ 7, 8, 12

- iii -

**Page**

*In re M.D.C. Holdings Sec. Litig.*,
    No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488
    (S.D. Cal. Aug. 30, 1990)................................................................. 15

*In re Prudential-Bache Energy Income P'Ships Sec. Litig.*
    No. 888, 1994 WL 202394 (E.D. La. May 18, 1994) ........................... 13

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................. 16

*In re Thirteen Appeals Arising out of the San Juan*
    *Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295, 307 (1st Cir. 1995) ...................................................... 5

*In re VistaCare, Inc. Sec. Litig.*,
    No. CV 04 1661 PHX FJM, slip op. (D. Ariz. Sept. 29, 2006) ............ 14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994).................................................*passim*

*In re White Elec. Designs Corp. Sec. Litig.*,
    No. CV-04-1499-PHX-SRB, slip op. (D. Ariz. May 24, 2007)............ 14

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ...................................... 8, 15, 16

*J. N. Futia Co. v. Phelps Dodge Indus., Inc.*,
    No. 78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261
    (S.D.N.Y. Sept. 17, 1982) ................................................................ 12

*Johnston v. Comerica Mortgage Corp.*,
    83 F.3d 241 (8th Cir. 1996)............................................................... 5

*Kaufman v. Motorola, Inc.*,
    No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627
    (N.D. Ill. Sept. 19, 2000) ................................................................. 11

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986)............................................................. 5

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................... 16

1

2                                                                                    **Page**

3  *Miller v. Woodmoor Corp.*,
        No. 74-F-988, 1978 U.S. Dist. LEXIS 15234
4        (D. Colo. Sept. 28, 1978).................................................................................... 9

5  *Miltland Raleigh-Durham v. Myers*,
        840 F. Supp. 235 (S.D.N.Y. 1993) ...................................................................... 17
6

7  *Paul, Johnson, Alston & Hunt v. Graulty*,
        886 F.2d 268 (9th Cir. 1989)....................................................................... 4, 5, 6
8

9  *Phemister v. Harcourt Brace Jovanovich, Inc.*,
        No. 77 C 39, 1984 U.S. Dist. LEXIS 23595
10       (N.D. Ill. Sept. 14, 1984) ....................................................................................... 5

11 *Rawlings v. Prudential-Bache Props.*,
        9 F.3d 513 (6th Cir. 1993) ...................................................................................... 5
12

13 *Robbins v. Koger Props.*,
        116 F.3d 1441 (11th Cir. 1997) ........................................................................... 14
14

15 *Six Mexican Workers v. Ariz. Citrus Growers*,
        904 F.2d 1301 (9th Cir. 1990) ............................................................................... 5
16

17 *Swedish Hosp. Corp. v. Shalala*,
        1 F.3d 1261 (D.C. Cir. 1993) ................................................................................. 5

18
   *Torrisi v. Tucson Elec. Power Co.*,
19       8 F.3d 1370 (9th Cir. 1993) ................................................................................ 5, 6

20 *Trustees v. Greenough*,
        105 U.S. 527 (1882) ............................................................................................... 4
21

22 *Vincent v. Hughes Air W., Inc.*,
        557 F.2d 759 (9th Cir. 1977)................................................................................... 4
23

24 *Vizcaino v. Microsoft Corp.*,
        290 F.3d 1043 (9th Cir. 2002).................................................................... 7, 8, 14

25

26

27

28

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78j(b) ............................................................................................................. 9, 10
  §78u-4(a)(3)(A)(i) .................................................................................................. 19

Federal Rules of Civil Procedure
  Rule 1 ..................................................................................................................... 8
  Rule 10b-5 ............................................................................................................... 8

**SECONDARY AUTHORITIES**

Charles Silver, *Class Actions in the Gulf South Symposium: Due Process and the Lodestar Method: You Can't Get There from Here* (June 2000)
  74 Tul. L. Rev. 1809 ............................................................................................... 6

Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* (NERA Nov. 1996) ......................................................... 15

Elliott J. Weiss, Janet E. Moser, *Enter Yossarian: How to Resolve the Procedural Catch-22 that the Private Securities Litigation Reform Act Creates* (1998)
  76 Wash. U. L. Q. 457 .......................................................................................... 10

Eugene Zelensky, *New Bully on the Class Action Block –Analysis of Restrictions on Securities Class Actions Imposed by the Private Securities Litigation Reform Act of 1995* (1998)
  73 Notre Dame L. Rev. 1135 ................................................................................ 10

## I.     INTRODUCTION

Lead Counsel have achieved a settlement that provides for the payment of $10 million in cash (plus accrued interest), 178,010 shares of CSK Auto Corporation ("CSK") common stock valued at $1,700,000 based on the closing price on March 20, 2008 ($9.55 per share) and corporate governance and contracting provisions which are set forth in Exhibits C and D to the Stipulation of Settlement dated as of April 16, 2008.[1]   The substantial recovery obtained for the Class was achieved through the skill, work, tenacity and effective advocacy of Lead Counsel.  As compensation for their efforts in achieving this result, Lead Counsel seek an award of attorney fees of 24.5% of the Settlement Fund, plus expenses incurred in the prosecution of the Litigation in the amount of $213,677.61, plus interest at the same rate and for the same period of time as that earned by the Settlement Fund until paid.  The requested fee is consistent with the Ninth Circuit's 25% "benchmark" fee in similar actions, numerous decisions in this District and Circuit, as well as decisions throughout the United States.[2]

Prosecution of this Litigation was undertaken by Lead Counsel on a wholly contingent basis and was extremely risky and difficult from the outset.  This Litigation was prosecuted under the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  The effect of the PSLRA is to make it harder for investors to bring and successfully conclude securities class actions.  Lead Counsel were mindful of the fact that in

---

[1]     Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in the Stipulation of Settlement which was previously filed with the Court.

[2]     Submitted herewith in support of approval of the proposed settlement is the Memorandum of Points and Authorities in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds (the "Settlement Brief") and the Declaration of Susan G. Taylor in Support of Motion for (1) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (2) an Award of Attorney Fees and Expenses ("Taylor Declaration"), which more fully describes the history of the Litigation, the claims asserted, the investigation undertaken, the negotiation and substance of the settlement, the substantial risks of the Litigation and the reasonableness of the fee and expense request.  Also submitted herewith are declarations from Lead and Liaison Counsel, which set forth the lodestar and expenses incurred in prosecuting the Litigation.

1  this post-PSLRA environment, a greater percentage of cases are being dismissed than ever

2  before, amid defendants' constant attempts to push the envelope and contours of the PSLRA.

3  Indeed, a study of securities class action cases filed between 1996 and 2001 found that 35%

4  of the cases filed were dismissed.  *See Securities Class Action Case Filings 2007: A Year in*

5  *Review* (Cornerstone Research 2008), http://securities.cornerstone.com/pdfs/ YIR2007.pdf.

6       The prosecution and settlement of this Litigation required great skills and extensive

7  efforts by Lead Counsel.  Lead Counsel marshaled considerable resources and committed

8  substantial amounts of time and expense in the research, investigation and prosecution of this

9  Litigation.  The settlement was not achieved until Lead Plaintiff and its counsel, *inter alia*:

10  (a) thoroughly investigated the facts underlying CSK's quarterly and yearly financial results

11  from March 20, 2003 to April 13, 2006 (the "Class Period");  (b) interviewed several

12  witnesses, including former employees of CSK;  (c) reviewed and analyzed CSK's publicly

13  filed financial statements and voluminous media files concerning CSK, including press

14  releases and public statements issued by the Company, and reviewed in detail a

15  comprehensive report prepared by the audit committee ("PWC Report");  (d) filed four

16  detailed and comprehensive complaints;  (e) litigated complex motions to dismiss involving

17  accounting and auditing standards and successfully defeated (in the main) Defendants'

18  challenges to Lead Plaintiff's second amended consolidated complaint;  (f) reviewed and

19  analyzed thousands of pages of documents produced by Defendants pursuant to formal

20  discovery requests;  (g) consulted with experts in accounting, materiality and loss causation;

21  (h) prepared for and participated in formal and informal mediation sessions;  (i) assessed the

22  risks of prevailing on their claims at trial;  and (j) successfully negotiated a highly favorable

23  settlement for the Class.

24       Lead Counsel firmly believe that the settlement is the result of their creative and

25  diligent services, as well as their reputations as attorneys who are unwavering in their

26  dedication to the interests of the class and unafraid to zealously prosecute a meritorious case

27  through trial and subsequent appeals.  In a case asserting claims based on complex legal and

28  factual issues which were vigorously opposed by highly skilled and experienced defense

1  counsel, Lead Counsel succeeded in securing a very good result for the Class.  As a result,

2  Lead Counsel submit that the requested fee is fair and reasonable and should be awarded by

3  this Court.

4  The Class does not appear to disagree.  In accordance with this Court's Order

5  Preliminarily Approving Settlement and Providing for Notice dated April 30, 2008 (the

6  "Notice Order"), copies of the Notice of Pendency and Proposed Settlement of Class Action

7  ("Notice") were mailed to more than 27,600 potential Class Members and a Summary Notice

8  was published in *Investor's Business Daily*.[3]  The Notice described the Litigation and the

9  proposed settlement, as well as Lead Counsel's intent to request an award of attorney fees of

10  24.5% of the Settlement Fund, and expenses not to exceed $250,000.  The Notice also

11  informed Class Members of their right to object to the settlement or this fee request.  While

12  the deadline for objections has not yet passed (June 16, 2008), to date not a single objection

13  to any aspect of the settlement, including the requested award of attorney fees and expenses,

14  has been received.

15  As discussed herein as well as in the Settlement Brief and the Taylor Declaration, the

16  requested fee is fair and reasonable when considered under the applicable standards in the

17  Ninth Circuit and is well within the range of awards in class actions in this Circuit and courts

18  nationwide, particularly in view of the substantial risks of bringing and pursuing this

19  Litigation, the extensive investigative and litigation efforts and the results achieved for the

20  Class.  Moreover, the expenses requested are reasonable in amount and were necessarily

21  incurred for the successful prosecution of this Litigation.

22

23

24

25

_____

26  [3]  *See* paragraphs 3 through 11 to the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Pendency and Proposed Settlement of Class Action and the Proof of Claim and Release Form and B) Publication of the Summary Notice, submitted herewith.

27

28

## II.     AWARD OF ATTORNEY FEES

### A.     The Legal Standards Governing the Award of Attorney Fees in Common Fund Cases Supports the Requested Award

#### 1.     A Reasonable Percentage of the Fund Recovered Is the Appropriate Approach to Awarding Attorney Fees in Common Fund Cases

For their efforts in creating a common fund for the benefit of the Class, Lead Counsel seek as attorney fees a reasonable percentage of the fund recovered for the Class.  In recent years, the percentage-of-recovery method has become the prevailing method for awarding fees in common fund cases in this Circuit and throughout the United States.  A percentage fee is desirable because it most fairly correlates the compensation of counsel to the benefit conferred upon the class.

It has long been recognized in equity that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994)  ("*WPPSS*").  This rule, known as the common fund doctrine, is firmly rooted in American case law.  *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527, 532-37 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 123 (1885).  As the Ninth Circuit explained in *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989):

> Since the Supreme Court's 1885 decision in [*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885)], it is well settled that the lawyer who creates a common fund is allowed an ***extra*** reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.  The amount of such a reward is that which is deemed "reasonable" under the circumstances.

*Id*. at 271 (emphasis in original; citations omitted).

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the

- 4 -

fund bestowed on the class."  In this Circuit, the district court has discretion to award fees in common fund cases based on either the "lodestar/multiplier" method or the percentage-of-the-fund method.  *WPPSS*, 19 F.3d at 1296.  In *Paul, Johnson*, 886 F.2d at 272, *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990), and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), the Ninth Circuit expressly approved the use of the percentage method in common fund cases.  Supporting authority for the percentage method in other circuits and by commentators is overwhelming.[4]

Since *Paul, Johnson* and its progeny, Ninth Circuit courts have been virtually unanimous in adopting the percentage method to awarding fees in representative actions.  Compensating counsel in common fund cases on a percentage basis makes good sense.  First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery.[5]  Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.[6]  Indeed, one of the nation's

---

[4]      *See, e.g.*, *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 564-65 (7th Cir. 1994); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *WPPSS*, 19 F.3d at 1296; *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994) (authorizing percentage approach and holding that use of lodestar/multiplier method was abuse of discretion); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("After reviewing *Blum*, the [Third Circuit] Task Force Report, and . . . cases from other circuits, we believe that the percentage of the fund approach is the better reasoned in a common fund case."); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) (percentage of the fund recovered is the only permissible measure of awarding fees in common fund cases).

[5]      *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992).  *See also Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, at *40-41 (N.D. Ill. Sept. 14, 1984).

[6]

      The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client.  The lawyer gains only to the extent his client gains. . . .  The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours.  Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants. . . .

leading scholars in the field of class actions and attorney fees, Professor Charles Silver of the University of Texas School of Law, has concluded that the percentage method of awarding fees is the only method of fee awards that is consistent with class members' due process rights.  Professor Silver notes:

> ***The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad.***  It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges, including those who contributed to the Manual for Complex Litigation, the Report of the Federal Courts Study Committee, and the report of the Third Circuit Task Force.  Indeed, it is difficult to find anyone who contends otherwise.  No one writing in the field today is defending the lodestar on the ground that it minimizes conflicts between class counsel and absent claimants.
>
> ***In view of this, it is as clear as it possibly can be that judges should not apply the lodestar method in common fund class actions.***  The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives.  The contingent percentage approach accomplishes this.

Charles Silver, *Class Actions in the Gulf South Symposium: Due Process and the Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809, 1819-20 (June 2000) (footnotes omitted, emphasis added).  Third, use of the percentage method decreases the burden imposed on the court by eliminating the detailed and time consuming lodestar analysis while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement.  *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989).

### 2.   A Percentage Fee of 24.5% of the Fund Created Is Reasonable in This Case

In *Paul, Johnson*, the Ninth Circuit established 25% of the fund recovered as the "benchmark" award to be adjusted upward or downward depending on the circumstances of the particular case.  886 F.2d at 272.  *See also Torrisi*, 8 F.3d at 1376.  The guiding principle

---

> At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

*Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986).

remains that a fee award be "'reasonable under the circumstances.'"  *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted).  In view of the risks faced and overcome, the quality of representation and the financial commitment of Lead Counsel, as well as the result obtained from the Class, an award of 24.5% of the recovery is reasonable.  The district courts in this Circuit and other circuits consistently award percentages of 25% or more in securities class actions, as demonstrated by the more than 300 cases cited in Appendix A, attached hereto.

**B.     Other Relevant Factors Justify an Award of a 24.5% Fee in This Case**

Lead Counsel seek an attorney fee of 24.5% of the fund recovered and submit that such an award is reasonable and appropriate under the circumstances of this case.

**1.     The Result Achieved**

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

Here, a substantial recovery of $11.7 million in cash and stock plus important corporate governance and contracting provisions have been obtained through the efforts of Lead Counsel at a relatively early stage of the litigation without the substantial expense, delay, risk and uncertainty of continued litigation and trial.[7]  Indeed, early settlements are encouraged by courts and are consistent with the purposes of the Federal Rules of Civil

---

[7]     "Incidental or nonmonetary benefits conferred by the litigation are a relevant circumstance" in awarding fees.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002).

- 7 -

1   Procedure, which "'shall be construed and administered to ensure the **just, speedy, and**

2   **inexpensive determination** of every action.'"   *In re Xcel Energy, Inc., Sec., Derivative &*

3   *"ERISA" Litig.*, 364 F. Supp. 2d 980, 922 (D. Minn. 2005) (quoting Fed. R. Civ. P. 1)

4   (emphasis in original).  The *Xcel* court, in awarding a 25% fee of an $80 million securities

5   class action settlement (over a number of objections, including a sophisticated pension fund),

6   complimented counsel for the efficient prosecution of the case and the prompt resolution of

7   the litigation.

8          As detailed in the Settlement Brief and the Taylor Declaration, there were significant

9   legal and factual roadblocks to obtaining a favorable judgment in this Litigation.  Despite the

10  serious obstacles to recovery, Lead Counsel secured a sizeable recovery for the benefit of the

11  Class.  As a result of this settlement, Class Members will receive compensation for their

12  losses in CSK common stock now and avoid the substantial expense, delay and uncertainty

13  of continued litigation.

14                    **2.      The Risks of the Litigation and the Novelty and Difficulty**
                              **of the Questions Presented**
15
16         Numerous cases have recognized that risk as well as the novelty and difficulty of the

    issues presented are important factors in determining a fee award.  *E.g.*, *Vizcaino*, 290 F.3d
17
    at 1048; *WPPSS*, 19 F.3d at 1299-1301.  Uncertainty that an ultimate recovery would be
18
    obtained is highly relevant in determining risk.  *WPPSS*, 19 F.3d at 1300.  As the court aptly
19
    observed in *King Resources*:
20
                 The litigation also involved unique and substantial issues of law in the
21           technical area of SEC Rule 10b-5, . . . difficult, complex and oft-disputed class
             action questions, and difficult questions regarding computation of
22           damages. . . .

23               In evaluating the services rendered in this case, appropriate
             consideration must be given to the risks assumed by plaintiffs' counsel in
24           undertaking the litigation.  The prospects of success were by no means certain
             at the outset, and indeed, the chances of success were highly speculative and
25           problematical.

26  420 F. Supp. at 632, 636-37.

27         There is no question that from the outset, this Litigation presented a number of

28  sharply contested issues of both fact and law and that Lead Plaintiff faced formidable

1   defenses to liability and damages.  Throughout the Litigation, Defendants have adamantly

2   denied liability and asserted that they had absolute defenses to Lead Plaintiff's claims.  *See*

3   *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004) (concluding that the district

4   court properly weighed risk when it concluded defendant's belief that it had a strong case on

5   the merits supporting finding of risk).

6          As discussed in the Taylor Declaration and the Settlement Brief, substantial risks and

7   uncertainties in this type of litigation, and in this case in particular, made it far from certain

8   that a recovery, let alone $11.7 million, would ultimately be obtained.  From the outset, this

9   post-PSLRA action was an especially difficult and highly uncertain securities case, with no

10  assurance whatsoever that the Litigation would survive Defendants' attacks on the pleadings,

11  motion for summary judgment, trial and appeal.   Indeed, courts have recognized that

12  "securities actions have become more difficult from a plaintiff's perspective in the wake of

13  the PSLRA."  *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).  As one

14  court noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits

15  will be short-circuited by the heightened pleading standard."  *Bryant v. Avado Brands, Inc.*,

16  100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds and remanded sub*

17  *nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).[8]  The pleading requirements in

18  private securities litigation are very demanding and the Ninth Circuit's decision in *Silicon*

19  *Graphics* established what is commonly accepted to be the most stringent standards of any

20  circuit to pleading a §10(b) claim.

21

22  _____

23  [8]     Even before the passage of the PSLRA, courts had noted that a securities case "by its
    very nature, is a complex animal."  *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641,
24  654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).  *See also*
    *Miller v. Woodmoor Corp.*, No. 74-F-988, 1978 U.S. Dist. LEXIS 15234, at *11-12 (D.
25  Colo. Sept. 28, 1978):

26          The benefit to the class must also be viewed in its relationship to the
    complexity, magnitude, and novelty of the case. . . .  Despite years of
27  litigation, the area of securities law has gained little predictability.  There are
    few "routine" or "simple" securities actions.

28

The application of the PSLRA to this Litigation posed significant risks to Lead Plaintiff's ability to survive Defendants' motions to dismiss.[9]  For example, with respect to its §10(b) claims, Lead Plaintiff had to survive the high burdens of the PSLRA for pleading scienter.  In fact, subsequent to the passage of the PSLRA, many cases in this Circuit and courts across the country have been dismissed at the pleading stage in response to defendants' arguments that the complaints do not meet the PSLRA's heightened pleading standards making it clear that the risk of no recovery (and hence no fee) has increased exponentially.  *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 241 (5th Cir. 2003) (affirming dismissal of securities fraud action against Bernard Ebbers and WorldCom even though Ebbers was later convicted criminally for the same alleged conduct).  Lead Plaintiff faced this very same risk in this Litigation.

While Lead Plaintiff survived (in the main) Defendants' attack on the pleadings, very difficult issues of proof remained as to key elements of a claim for securities fraud.  To establish that Defendants' statements were in fact materially false or misleading, Lead Plaintiff would have had to conduct extensive discovery focused on difficult, subjective questions relating to Defendants' knowledge of the alleged false statements.  There was no assurance that further discovery would support Lead Plaintiff's claims.  Moreover, the jury might find favor with Defendants' arguments that they acted reasonably under the circumstances and that the challenged statements were not false or misleading.

Even assuming Lead Plaintiff was able to prove liability, it still would have had to confront expert testimony by Defendants that any damages the Class suffered were not caused by any alleged misleading statements.  Lead Plaintiff also would have likely faced Defendants arguing that Lead Plaintiff's models for calculating damages (even if liability

---

[9]     *See* Elliott J. Weiss, Janet E. Moser, *Enter Yossarian: How to Resolve the Procedural Catch-22 that the Private Securities Litigation Reform Act Creates*, 76 Wash. U. L. Q. 457, 459 (1998) (noting that the PSLRA made it more difficult to set forth a claim and survive a motion to dismiss); Eugene Zelensky, *New Bully on the Class Action Block – Analysis of Restrictions on Securities Class Actions Imposed by the Private Securities Litigation Reform Act of 1995*, 73 Notre Dame L. Rev. 1135 (1998).

were established) were invalid in the wake of recent Supreme Court cases such as *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597-98 (1993). If Defendants succeeded on either of these two issues, it would severely reduce the amount of recoverable damages.[10]   *See also Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627, at *5-6 (N.D. Ill. Sept. 19, 2000) (granting defendants' motion *in limine* to strike testimony of plaintiffs' damages expert) (citing *Daubert*, 509 U.S. 579). Moreover, Defendants would have argued that Lead Plaintiff would be unable to prove loss causation based on the Supreme Court's recent decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005). To the extent that Defendants could prevail on issues relating to liability or show that any assumptions made by Lead Plaintiff's experts were incorrect or unreliable or could show that any portion of the market drop was due to factors other than the alleged fraud, the Class's claimed damages could be reduced significantly or eliminated. The reaction by a jury to such complex testimony is highly unpredictable and a jury could have very well sided with Defendants' experts. Thus, there was a real risk that even if Lead Plaintiff was successful in proving liability, that a jury could have awarded damages in an amount far less than the damages claimed by Lead Plaintiff or none at all.

Given the undecided legal and factual issues, as well as Defendants' vigorous denial of any wrongdoing, it is quite possible that a jury may have sided with Defendants and the Class would have recovered nothing. Thus, the complexity, magnitude and riskiness of this action plainly support the fee requested.

### 3. The Skill Required and the Quality and Efficiency of the Work

The "'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCx), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) (citation omitted). These unique skills were

---

[10]    *See In re Broadcom Corp. Sec. Litig.*, No. SA CV 01-275-GLT (MLGx), 2005 U.S. Dist. LEXIS 12118, at *12 (C.D. Cal. June 3, 2005) (rejecting plaintiffs' damage model in favor of defendants).

called upon here and support the requested fee.  From the outset, Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the Class.  This case required a determined investigation and the skill to respond to a host of legal and factual defenses raised by Defendants.  The quality of Lead Counsel's work on this case was excellent and is ultimately reflected in the result.

From the outset, Lead Counsel marshaled considerable resources and time in the research, investigation and prosecution of this Litigation.  During settlement negotiations, Lead Counsel demonstrated a willingness to continue to litigate (and in fact did) rather than accept a settlement that was not in the best interest of the Class.  The substantial recovery obtained for the Class is the direct result of the significant efforts of highly skilled and specialized attorneys who possess substantial experience in the prosecution of complex securities class actions.  Such quality, efficiency and dedication should be rewarded.  *E.g.*, *J. N. Futia Co. v. Phelps Dodge Indus., Inc.*, No. 78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261, at *3-4 (S.D.N.Y. Sept. 17, 1982).

The quality of opposing counsel is also important in evaluating the quality of the work done by Lead Counsel.  *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *King Res.*, 420 F. Supp. at 634; *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974).  Lead Plaintiff was opposed in this Litigation by very skilled and highly respected counsel from Gibson, Dunn & Crutcher LLP, an international law firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases such as this.  In the face of this formidable opposition, Lead Counsel were able to develop their case so as to persuade Defendants to settle the Litigation on terms highly favorable to the Class.

### 4. The Contingent Fee Nature of the Case and the Financial Burden Carried by Lead Counsel

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the settlement.

It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over

- 12 -

their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299.

Lead Counsel undertook this Litigation on a contingent fee basis, assuming a substantial risk that the Litigation would yield no recovery and leave them uncompensated. Unlike counsel for Defendants, who are paid an hourly rate and reimbursed for their expenses on a regular basis, Lead Counsel have not been compensated for any time or expense since this case began. The contingent nature of Lead Counsel's fees should be given substantial weight in assessing the requested fee award. *See, e.g.*, *Behrens*, 118 F.R.D. at 548. Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees. For example, in awarding counsel's attorney fees in *Prudential II*, the court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation. Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income P'Ships Sec. Litig.* ("*Prudential II*"), No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994).

Indeed, the risk of no recovery in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. Subsequent to the passage of the PSLRA, many cases have been dismissed at the pleading stage in response to defendants' arguments that the complaints do not meet the PSLRA's pleading standards. Lead Plaintiff's counsel were faced with that possibility in this case. Indeed, as noted above,

securities cases have always been complex and difficult and the PSLRA has only increased the risk in successfully prosecuting a securities class action.

Lead Counsel know from personal experience that, despite the most vigorous and competent efforts, their success in contingent litigation such as this is never guaranteed. In similar cases, plaintiffs' counsel have suffered major defeats after years of litigation, trial, and appeals in which they expended millions of dollars of time and received no compensation at all. Even a victory at the trial stage is not a guarantee of success. A good example is *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997), in which the Eleventh Circuit reversed an $81.3 million jury verdict won by class plaintiffs in a securities class action after almost seven years of litigation and rendered judgment for the defendant. The Court of Appeals ruled for the first time in the Eleventh Circuit that plaintiffs could not establish loss causation by showing the price of the security was inflated by the misrepresentations. *Id*. at 1448-449. Indeed, because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable and difficult effort. The contingent nature of Lead Counsel's representation strongly favors the requested percentage.

**5.    A 24.5% Fee Award Is Consistent With or Lower than the Market Rate in Similar Complex, Contingent Litigation**

Courts often look to fees awarded in comparable cases to determine if the fee requested is reasonable. *See Vizcaino*, 290 F.3d at 1050 n.4. As demonstrated by the decisions cited in Appendix A attached hereto, fees of 25% or more have been repeatedly awarded by the courts in this Circuit and District and in numerous other similar cases throughout the country. There are several recent examples in this District where courts have awarded fees of 25% or more. *See, e.g.*, *In re AMERCO Sec. Litig.*, No. CIV-04-2182-PHX-RJB, slip op. (D. Ariz. Nov. 2, 2006) (awarding a 30% fee of a $7 million settlement plus expenses in the amount of $598,077.05); *In re VistaCare, Inc. Sec. Litig.*, No. CV 04 1661 PHX FJM, slip op. (D. Ariz. Sept. 29, 2006) (awarding a 25% fee of a $4.6 million settlement plus expenses in the amount of $353,064.87); and *In re White Elec. Designs Corp.*

*Sec. Litig.*, No. CV-04-1499-PHX-SRB, slip op. (D. Ariz. May 24, 2007) (awarding a 25% fee of a $5.7 million settlement plus $70,362.46 in expenses).  The court in *Xcel*, after considering "cases from [the district of Minnesota], other districts, and [ ] attorney fee studies referenced in other cases," concluded that "this factor – comparison to other cases – supports the 25% requested [fee]."  *Xcel*, 364 F. Supp. 2d at 998-99.

The requested fee is also less than the average attorney-fee percentage granted as demonstrated by an analysis of fee awards in class actions conducted in 1996 by National Economic Research Associates ("NERA"), an economics consulting firm.  Using data from 433 shareholder class actions, the study reports on the central question of attorney fees: "Regardless of case size, fees average approximately 32 percent of the settlement." Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13 (NERA Nov. 1996).  Specifically, NERA examined 433 settlements, including those in the $10-$49 million range, which is where this settlement falls.  There were 76 settlements in this range, and the average attorney fee as a percentage of the settlement in those cases was 31.72%.  Of the 433 settlements, 155, or 35.8%, were in the Ninth Circuit.  The average attorney fee as a percentage of the settlement in this Circuit was 32.57%.

Moreover, if this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. The Supreme Court in *Blum*, stated:

> "In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery."

465 U.S. at 903* (citation omitted); *Ikon*, 194 F.R.D. at 194 ("in private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery"); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *22 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.").

### 6.     The Requested Fee Is Reasonable When Cross-Checked Against Counsel's Lodestar

As reflected in the declarations of Lead and Liaison Counsel (filed concurrently), counsel have expended over 2,400 hours with a resulting lodestar of $1,019,846.25 in the investigation and prosecution of this Litigation.  Thus, the requested fee of 24.5% of the $11.7 million Settlement Fund, or $2,866,500, represents a modest multiplier of approximately 2.8.  *See In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ("'In recent years multipliers of between 3 and 4.5 have been common' in federal securities cases.") (citations omitted); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("it clearly appears that the modest multiplier of 4.65 is fair and reasonable").  Moreover, the legal work on this Litigation will not end with the Court's approval of the settlement.  Additional hours and resources will necessarily be expended assisting Class Members with their proofs of claim and other inquiries, as well as overseeing the claims administration process.

While Lead Counsel have devoted a significant amount of time and resources in the research, investigation, and prosecution of this Litigation, counsel have also prosecuted this Litigation in an efficient and highly effective manner, resulting in an excellent recovery for the Class, at a relatively early stage of the litigation, without the substantial expense, risk and delay of continued litigation.  As noted by the court in *Xcel*, which is equally applicable here, "[t]his is the type of complex litigation that easily could have dragged on for several more years.  Instead, it had a relatively short stay of two and a half years on this court's docket because counsel litigated the case efficiently and inexpensively.  The lodestar of plaintiffs' counsel could easily have been much higher had not counsel cooperated with one another though the litigation and settlement process." [11] *Xcel*, 364 F. Supp. 2d at 992 (awarding a

---

[11]     *In re Harrah's Entm't*, No. 95-3925, 1998 U.S. Dist. LEXIS 18774, at *15 (E.D. La. Nov. 25, 1998) ("Because counsel prosecuted this action on a contingent fee basis, the Court would rather focus on results obtained.  To overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services.").

1  25% fee of an $80 million settlement resulting in a 4.7 multiplier).  In these circumstances, a

2  multiplier of approximately 2.8 is reasonable and no reduction of the requested percentage

3  fee is warranted.

4  **III.    COUNSEL'S EXPENSES ARE REASONABLE AND WERE
       NECESSARILY INCURRED TO ACHIEVE THE BENEFIT
5        OBTAINED**

6        Lead and Liaison Counsel also request reimbursement of expenses incurred by them

7  in connection with the prosecution of this Litigation.    Lead and Liaison Counsel have

8  submitted separate declarations attesting to the expenses incurred in this Litigation.

9        Counsel have incurred expenses in the aggregate amount of $213,677.61 in

10  prosecuting this Litigation.  These expenses are categorized in the declarations of Lead and

11  Liaison Counsel, submitted to the Court herewith.

12        The appropriate analysis to apply in deciding which expenses are compensable in a

13  common fund case of this type is whether the particular costs are of the type typically billed

14  by attorneys to paying clients in the marketplace.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th

15  Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket

16  expenses that 'would normally be charged to a fee paying client.'") (citation omitted).

17  Therefore, it is proper to reimburse reasonable expenses even though they are greater than

18  taxable costs.  *Id*.  *See also Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-

19  26 (10th Cir. 1993) (expenses reimbursable if they would normally be billed to client);

20  *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if

21  customary to bill clients for them); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235,

22  239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket

23  expenses incurred and customarily charged to their clients, as long as they 'were incidental

24  and necessary to the representation' of those clients.") (citation omitted).  The categories of

25  expenses for which counsel seek reimbursement here are the type of expenses routinely

26  charged to hourly clients and, therefore, should be reimbursed out of the common fund.

27        A significant component of Lead Counsel's expenses is the cost of their experts,

28  consultants and investigators.  In the post-PSLRA and *Silicon Graphics* era, the use of

professional investigators to gather detailed fact-specific information from percipient witnesses in order to plead complaints that will survive motions to dismiss is a necessity. These in-house investigators and Soundview Intelligence, LLC, a private investigation firm, conducted a substantial amount of work on behalf of the Class. They were able to identify, locate and interview numerous witnesses who had knowledge of the alleged wrongdoing. Lead Counsel and/or their investigators interviewed numerous potential witnesses, including several former employees of CSK. Counsel used the fruits of this extensive investigation to plead fact specific complaints, identify potential witnesses with relevant information concerning the alleged wrongdoing, evaluate the strengths and weaknesses of Lead Plaintiff's case, and assist in settlement negotiations. The investigators were instrumental in helping Lead Plaintiff achieve this result for the benefit of the Class.

Lead Counsel also incurred expenses of in-house economic and damage consultants. These consultants performed several important tasks for counsel, including calculating shares available to trade and preliminary damages analyses under different scenarios. They also reviewed and analyzed SEC filings for insider selling and vesting options to determine the extent and amount of the number of shares sold during the Class Period by each individual defendant, researched CSK's stock price activity and compared it with other companies in its peer group in preparing damages analyses and prepared the Plan of Allocation of settlement proceeds. In addition, Lead Counsel retained CBIZ Valuation Group, Inc. to perform preliminary damage estimates, submit a declaration including a detailed event study on the efficiency of the market for CSK stock in support of class certification, and prepare for trial including the preparation of an expert report. These consultants provided significant services on behalf of the Class and their expenses were necessarily incurred for the successful prosecution of this Litigation.

Lead Counsel also incurred expenses of in-house forensic accounting experts who helped Lead Counsel in reviewing and understanding CSK's financial statements and assisted in drafting the accounting allegations. In addition, Lead Counsel hired an outside

1   accounting firm, Hemming Morse, Inc., to prepare for trial and opine on the accounting
2   allegations.

3          Other expenses include the costs of computerized research.  These are the charges for
4   computerized factual and legal research services, including LEXIS, Westlaw, Dow Jones,
5   Disclosure, Inc., CDA Investment Technologies, Pacer Service Center and Choice Point.  It
6   is standard practice for attorneys to use these services to assist them in researching legal and
7   factual issues.  These services, among other things, allowed counsel to access CSK's SEC
8   filings, perform media searches on CSK, obtain analysts' reports on CSK, assist in
9   developing Lead Plaintiff's damages analyses and allowed the investigators to locate and
10  obtain information on witnesses and Defendants.

11         Lead Counsel were also required to travel in connection with this Litigation and thus
12  incurred the related costs of meals, lodging and transportation.  Counsel in this case traveled
13  to attend court hearings, to gather factual information, for deposition, and to attend the
14  mediations.

15         Counsel are also seeking reimbursement of expenses incurred by reason of Lead
16  Plaintiff's compliance with the PSLRA, 15 U.S.C. §78u-4(a)(3)(A)(i), which requires that,
17  within 20 days after the date on which a class action is filed under the PSLRA, "the plaintiff
18  or plaintiffs shall cause to be published, in a widely circulated national business-oriented
19  publication or wire service, a notice advising members of the purported plaintiff class – (I) of
20  the pendency of action, the claims asserted therein, and the purported class period; and (II)
21  that, not later than 60 days after the date on which the notice is published, any member of the
22  purported class may move the court to serve as lead plaintiff of the purported class."
23  Because this was a necessary expense incurred by Lead Counsel, it should be reimbursed.

24         Other expenses that were necessarily incurred in the prosecution of this Litigation
25  include expenses for photocopying, mediation fees, filing fees, postage and overnight
26  delivery, and telephone and telecopier expenses.

27

28

## IV.     CONCLUSION

Based on the foregoing and upon the entire record herein, Lead Counsel respectfully submit that the Court award attorney fees in the amount of 24.5% of the Settlement Fund plus expenses in the amount of $213,677.61, plus the interest earned thereon at the same rate and for the same period as that earned on that portion of the Settlement Fund until paid.

DATED:  May 29, 2008

Respectfully submitted,

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN (AZ005425)
FRANCIS J. BALINT, JR. (AZ007669)
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)
afriedman@bffb.com
fbalint@bffb.com

Liaison Counsel

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
JEFFREY D. LIGHT
SUSAN G. TAYLOR
TRIG R. SMITH
ERIC I. NIEHAUS


                    s/ Jeffrey D. Light
————————————————————————
                  JEFFREY D. LIGHT

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

S:\Settlement\CSK Auto.set\BRF FEE 00051564.doc

1

<u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on May 29, 2008, I electronically filed the foregoing with the

3  Clerk of the Court using the CM/ECF system which will send notification of such filing to

4  the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify

5  that I have mailed the foregoing document or paper via the United States Postal Service to

6  the non-CM/ECF participants indicated on the attached Manual Notice List.

7          I certify under penalty of perjury under the laws of the United States of America that

8  the foregoing is true and correct.  Executed on May 29, 2008.

9

10          s/ Jeffrey D. Light
          JEFFREY D. LIGHT

11          COUGHLIN STOIA GELLER
               RUDMAN & ROBBINS LLP
12          655 West Broadway, Suite 1900
          San Diego, CA  92101-3301
13          Telephone:  619/231-1058
          619/231-7423 (fax)
14

15          E-mail:       jeffl@csgrr.com

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 2:06-cv-01503-DGC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzia@csgrr.com

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com,dmoy@bffb.com,rcreech@bffb.com

- **Yasmin N Best**
  yasmin.best@lw.com

- **Donald Wayne Bivens**
  dbivens@swlaw.com,fwortman@swlaw.com,sstanley@swlaw.com,docket@swlaw.com

- **Ethan Joseph Brown**
  ethan.brown@lw.com,valerie.ferguson@lw.com

- **Alison K Clark**
  aclark@sbclasslaw.com,ecf_filings@sbclasslaw.com

- **Gareth T Evans**
  gevans@gibsondunn.com

- **Andrew S Friedman**
  afriedman@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com

- **Jeffrey Dale Gardner**
  jgardner@rdp-law.com,vcolwell@rdp-law.com,jgoodwin@rdp-law.com

- **Richard Glenn Himelrick**
  rgh@tblaw.com,sab@tblaw.com

- **Kathryn Ann Jann**
  kjann@bffb.com,tdinardo@bffb.com,rcreech@bffb.com

- **Cathy K Kazemi**
  ckazemi@ruflaw.com

- **Michael Leroy Kitchen**
  mlkitchen@mclawfirm.com,kallison@mclawfirm.com

- **Dean Joel Kitchens**
  dkitchens@gibsondunn.com,gperez@gibsondunn.com

- **William Shannon Lerach**
  general_efile@csgrr.com

- **Jeffrey D Light**
  jeffl@csgrr.com,jstark@csgrr.com

- **Richard A Maniskas**
  ecf_filings@sbclasslaw.com

- **James M McGuire**
  jmcguire@rdp-law.com,rautrey@rdp-law.com

- **Joy Magdellana Morton-Owens**
  lana.morton-owens@lw.com,valerie.ferguson@lw.com

- **Mark A Nadeau**
  mark.nadeau@dlapiper.com,pat.kelly@dlapiper.com

- **Eric I Niehaus**
  ericn@csgrr.com

- **Edward F Novak**
  ed.novak@mwmf.com,christine.hart@mwmf.com

- **Salvador Ongaro**
  so@tblaw.com,lat@tblaw.com

- **Thomas Christian Raine**
  traine@ssd.com,phxdocketmb@ssd.com

- **Patricia Lee Refo**
  prefo@swlaw.com,jaltendorf@swlaw.com,docket@swlaw.com

- **Brian J Robbins**
  robbins@ruflaw.com,fink@ruflaw.com,ckazemi@ruflaw.com,kscheele@ruflaw.com

- **Darren J Robbins**
  E_File_SD@csgrr.com

- **Paul J Roshka , Jr**
  roshka@rdp-law.com,rautrey@rdp-law.com,jgoodwin@rdp-law.com

- **Trig Randall Smith**
  trigs@csgrr.com,e_file_sd@csgrr.com

- **Susan G Taylor**
  susant@csgrr.com,e_file_sd@csgrr.com

- **Marc A Topaz**
  ecf_filings@sbclasslaw.com

- **Rebecca Bree Torres**
  rebecca.torres@lw.com

- **Marc M Umeda**
  mumeda@ruflaw.com

- **Patrick James Van Zanen**
  pvanzanen@mclawfirm.com,pcopeland@mclawfirm.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)